### LUNG v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. **January 4, 1915.**)

No. 2312.

**1. CRIMINAL LAW (§ 510*)—TESTIMONY OF ACCOMPLICES—NECESSITY OF CORROBORATION.**

In the federal courts the testimony of a confessed accomplice need not be corroborated to support a conviction, though such testimony should be received with suspicion and with the greatest care and caution, and not taken as that of an ordinary witness of good character, generally and prima facie supposed to be true.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1124–1126; Dec. Dig. § 510.*]

**2. COURTS (§ 337*)—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.**

The federal courts in criminal cases are not governed by state statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 908; Dec. Dig. § 337.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**3. CRIMINAL LAW (§ 511*)—TESTIMONY OF ACCOMPLICES—NECESSITY OF CORROBORATION.**

On a trial for conspiring to bring certain Chinamen into the United States contrary to law, evidence *held* to corroborate the testimony of accomplices sufficient to support a conviction, assuming that corroboration was essential.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1128–1137; Dec. Dig. § 511.*]

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Frank R. Rudkin, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

218 F.—52

C. W. Lung was convicted of an offense, and he brings error. Affirmed.

McKeeby & Redd, of Los Angeles, Cal., for plaintiff in error.

Albert Schoonover, U. S. Atty., of San Diego, Cal., and Duke Stone, Asst. U. S. Atty., of Los Angeles, Cal.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

ROSS, Circuit Judge. We have examined the record in this case with care, and are of opinion that the assignments of error are without merit. The plaintiff in error was charged by indictment, together with Manuel Mendoza, Martin Mendoza, L. W. Noel, Me Hong, Joaquin Nand, and Arthur Daly, with having unlawfully conspired together to bring into the United States from Mexico certain Chinamen, contrary to the provisions of the statutes of the United States in that behalf enacted. Upon his trial for that alleged offense he was convicted by the jury and sentenced by the court below. On the trial the guilt of Manuel Mendoza and of Noel was conceded, and they were the principal witnesses against the plaintiff in error—in their testimony going into the details of the unlawful transactions and directly connecting the plaintiff in error, Lung, therewith, for whom, according to their testimony, the prohibited Chinese were smuggled into the country by them. The main point on behalf of the plaintiff in error is that, as those witnesses were co-conspirators, the plaintiff in error could not be legally convicted without corroborating evidence, and that there was no such evidence.

[1, 2] In the first place it may be said that, while many of the states have statutes to the effect that no one can be legally convicted of a conspiracy on the testimony of a co-conspirator without independent corroborating evidence, there is no such statute of the United States. That the federal courts, in criminal cases, are not governed by state statutes, is well settled. The testimony of a confessed accomplice, as said by the Supreme Court in Crawford v. United States, 212 U. S. 183, 204, 29 Sup. Ct. 260, 268 (53 L. Ed. 465, 15 Ann. Cas. 392) however, is—

"not to be taken as that of an ordinary witness, of good character, in a case whose testimony is generally and prima facie supposed to be correct. On the contrary, the evidence of such a witness ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses."

The instructions of the court below to the jury in the present case not being contained in the record, and there being no complaint in regard to them, the presumption is that the jury was so instructed.

[3] Nor is the contention on behalf of the plaintiff in error that there was no corroboration of the testimony of the co-conspirators well founded. The Chinese in question were, according to the testimony of Mendoza and Noel, brought into the United States by them by means of automobile from places in Mexico near Tia Juana, situate a little south of San Diego, Cal.—three trips being made by the smug-

glers, the first up the coast to Los Angeles, on which trip two China-men were brought and delivered to Lung in Los Angeles; the second, by what is spoken of in the record as the inland route, passing a place called Temecula, and on which trip the co-conspirators brought three Chinamen, two of whom were disguised as women, and all of whom were delivered to Lung in Los Angeles; and the third trip being made by the coast route, on which, in addition to the Chinamen, certain opium was also smuggled into the country by Mendoza and Noel, and on which last trip they were apprehended by officers of the government.

Even if corroborating evidence was essential, it is abundantly shown in the record. It will be enough to refer to one or two instances. It was shown by the testimony of the co-conspirators that on the inland trip, when they reached a point near Temecula, one of the wheels of the machine was broken, and that they telephoned from Temecula to San Diego for another wheel. The witness Walling testified on be-half of the government that at the times in question he was in the au-tomobile business in San Diego, and hired an automobile to Noel, for which he paid him, and with which machine he made two trips; that on the night of December 7 or 8, 1911, he got a telephone message from Temecula—

"that they had broken a wheel, and for me to bring one out to them, which I did, and delivered it to them at Temecula, and then came back to San Diego."

And the witness Escallier testified as follows:

"I remember seeing Mr. Noel and Mr. Mendoza near Temecula in December, 1911. They were in an automobile, about two miles beyond Temecula. I saw another Mexican, and one sitting in an automobile, and two others down below. The other two I spoke of were dressed as women. They sent me back to Temecula to have the garage man there come up. These two persons who were dressed as women were about 30 or 40 yards from me when I saw them. I never was any closer than that, and could not tell whether they were Mexicans, or what nationality they were. This was about 4 o'clock in the afternoon."

The plaintiff in error, Lung, it appears from the testimony of the co-conspirators, lived in Los Angeles, where he had a place of busi-ness, and it was there that Mendoza and Noel delivered the Chinamen to him. The government witness Barnard testified, among other things, as follows:

"I am the official who arrested the defendant C. W. Lung, which arrest took place in San Diego, Cal., at about the hour of 8:10 of the morning of December 14, 1911. (Witness shown two railroad tickets purchased from the Atchison, Topeka & Santa Fé Railroad Company for transportation from Los Angeles to San Diego and return, offered in evidence by the government and stipulated by the attorneys for respective parties that the same were purchased by the defendant C. W. Lung, concerning which witness testified.) I took this ticket, showing date of purchase December 12, 1911, the validating stamp December 14, 1911, from the possession of the defendant C. W. Lung when I made the arrest. (The other ticket in evidence shows that it was purchased on December 5, 1911, bearing validating stamp of December 7, 1911, San Diego, California.)"

The witness Jones testified, among other things, as follows:

"I reside in the city of San Diego, state of California. By occupation I am a United States immigrant inspector, and was such in December, 1911. I am acquainted with Martin Mendoza and Wm. Noel, and was present on the occasion of their arrest on the 13th day of December, 1911. They were arrested at a place known as Point San Juan, on the coast road, about halfway between Los Angeles and San Diego. On the occasion of their arrest they were going in the direction of Los Angeles. This occurred about the hour of 1:30 a. m., I should judge. Myself and Inspector Allison were together at the time. We were looking for these defendants, Noel and Mendoza. We had been watching at that certain place for three nights. They had made one trip before this, which was about the 7th of the month, or about a week before their arrest. I saw them on that trip going north towards Los Angeles, but was not looking for them on that occasion. I was at that time stationed at Elsinore, and was called from Elsinore over to Fall Brook. On the night of their arrest, about December 13, 1911, we were out watching for this outfit. I had the number of the car, and their names, and also a description of the car. About 1 or 1:30 I saw a light of a machine coming about three miles down the road. We camped on the beach, and I placed a lantern in the middle of the road, right at the top of the grade, and wrapped a red bandana handkerchief around it. It was tolerable steep there, so they slowed down with their machine. I asked whose machine it was, and Mr. Noel said it belonged to Mr. Walling in San Diego. I told him we were looking for that machine. In the machine we found the Chinaman and 12 cans of opium. The Chinaman was covered over with blankets, and the opium piled in the tool box."

There are various other items of corroborating evidence in the record, unnecessary to be stated.

We find no error in the record justifying a reversal of the judgment, which is therefore affirmed.